Good morning, Your Honors. I'm Marion Yagman for the Plaintiff Appellants Baeza v. Baca and Inquirel v. Baca. Would you keep your voice up, please? I'm having difficulty hearing you. I will certainly do that. Thank you, Your Honor. May it please the Court, these two cases were brought to augment temporally the class period that was fixed by the Court in the Thomas v. Baca case, which will be argued later this morning. All three cases are the same except for the time period, and all three cases should have been consolidated. These cases rode with Thomas for potential settlement, and only after the three cases weren't settled did the District Court dismiss them. They should have gone to trial with Thomas, and more than six months after Thomas went to trial, these cases were dismissed. Plaintiffs in these cases and in the Thomas case made every effort to advance the cases, and I think that's evident from the excerpts of record and from plaintiffs' briefs. And nonetheless, the Court, in response to defendants' motions or ex parte applications, vacated all of the hearings on plaintiffs' motions to move the cases forward in 2007. It refused to allow discovery in the Baeza case as of November 2008. Can I ask you some questions about the timeline in this case? Let me start from the assumption that at some point along the way the judge stayed discovery, correct? Correct, yes, Your Honor. And he did so to allow you to pursue settlement discussions both in this case and the other Thomas case, correct? Yes. And also because he was going to rule on class decertification and other issues in the other case, and those would affect this one. No, I think that's what he was originally stayed the case for was the opinion in Thomas versus his opinion, an order in Thomas versus Baca holding there was manel liability for floors. So he was dealing with issues that would cover all three cases. The certification came out very much later. Okay. Here's my question. At some point along the way, this Court denied the permission for leave to appeal the decertification order in the Thomas versus, I guess it's county of Los Angeles case. I think in my mind of it as Thomas 1, the first case filed. But in any event, once that occurred, and once you knew that settlement wasn't going to go through, and that occurred in September of 1912, what did anybody do to advance these two cases thereafter? In other words, I'm willing to, in my own mind, overlook all the delay up to that point. But at that point, you knew that the judge had decertified the class in the other case. He wasn't going to, clearly going to grant class certification in this case for the same reason. These cases, two individual cases, had to be ready for trial individually. And I'm trying to figure out what you did to advance the case after that point. Well, first of all, there was a motion pending in Thomas to consolidate these two cases with Thomas that the Court never ruled on. Okay. But without regard to whether they were consolidated, you would have had, you still would have had an individual trial on these two cases, because the judge had made clear at that point you weren't going to get class action. So what did you do to advance the cases after September of 2012? And that has to do with my disability. That came up and was, in my opinion, an extraordinary circumstance. Okay. And put that aside for a second. It may well be a sufficient excuse. I'm asking a different question. Was anything done to advance these cases in the time period after September 2012 and before you moved to lift the stay, which is about a year and a half later? No. Because of my disability. Because of your disability. Yes, exactly. And I think it was less than actually a year and a half. It was more like a year and a couple of months. Well, it's, I guess, from September through September 10th, the Ninth Circuit issues an order saying we're not going to hear the decertification appeal. That's 2012. And the motions to lift the stay in these cases are filed in March of 2014. So it's 18 months. Eighteen months minus three days. I have to say that in order to file a motion, there are certain prerequisites, such as you have to file, you have to have a meet and confer, and all these things take place. Right. So what occurred? The short answer, I think, is that because of your disability, nothing occurred during those 18 months in these cases. That's right. Counsel, just clarify for me, if you would, the, you had these companion motions to consolidate. You had the motion to consolidate in the two cases we're talking about here. Then in the Major Thomas case, there was sort of a companion motion to consolidate with these two cases. What was the status of those motions to consolidate at the time that the Thomas trial actually took place? They had never been ruled on. They had never been ruled on. Is that correct? My understanding is the judge, we had a hearing at which the judge took it under submission, and he just didn't rule on those motions. Would have been practical. That motion. I'm sorry. Finish your answer. There was also a prior motion in Corral to consolidate back in 2007. So there were two motions to consolidate made. Well, given the continuing pendency of those motions and the failure to rule on them, did, under the rules, did you have any responsibility to advise the judge of the continuing pendency of those motions and the failure to rule on them? I don't believe that we did. No, I don't believe that we had that obligation. The court knew about it. It had had a hearing. There had been a hearing, possibly, but it had taken it under submission, and in this particular instance, no, we didn't do anything other than, you know, make the motion for a second time. I was trying to figure out the practical effect of consolidation once the judge decided not to certify, to decertify the class in the original Thomas litigation. As I understand it, in the original Thomas litigation, you had a three-day jury trial. Yes. On behalf of the two named plaintiffs? Correct. So these would have been two relatively short jury trials on behalf of the named plaintiffs in Corral and Baeza? I think so, yes. Even though there were more plaintiffs, it still would not have been particularly lengthy trials if there wasn't a certified class. Right, and you knew there wasn't going to be a certified class because the judge already ruled on that. Correct, Your Honor. So it just really would have gone pretty quickly, in my opinion. Wouldn't you have needed some discovery in the Corral and Baeza cases? I had extensive discovery that I personally had. We would have needed very little discovery except for the various plaintiff's records of where they were in the jail. So that's de minimis. It strikes me it wouldn't have been very difficult to prepare for trial in these two cases because they've now become one plaintiff cases. And I looked a little bit at the record in the Thomas versus Los Angeles case, and basically what happened was you put on the plaintiffs who said what happened, and then you said to the state, okay, what's your excuse? I'd like to reserve for a reply. I'm just looking at the clock here. I'd like to have a few minutes to reply. Unless the Court has some pressing question. No, unless Judge Baez does. Is there something I have to press here? Yeah. All right. Thank you very much. We'll save that time for rebuttal. Good morning, Your Honors. Justin Clark for Defendant Appelli. May it please the Court, I'd just like to respond to a few of the items that came up during counsel's argument. Initially, with respect to the argument that the cases are the same, I don't believe that they are. They do cover different time periods and they cover different facilities, and particularly with respect to the Baeza case, it covers a period of time where the record shows that floor sleeping had ended altogether. Well, but you might have won it on the merits. I guess my question goes to the last question I asked your colleague here. These strike me once you accept that the class is not going to be certified as relatively simple trials. You're going to put on somebody who says, I was forced to sleep on the floor, and you're either going to say, no, you weren't, or we have some excuse. And by that point, the judge has said there are no excuses for it. And so what's the big deal about just taking these two individual cases to trial? Well, respectfully, Your Honor, I wouldn't necessarily say that they're simple, but I would agree that the issues that would have to be briefed as part of the trial. Because the judge has already ruled that the practice of making inmates sleep on the floor or detainees sleep on the floor is unconstitutional. Correct. There had already been a finding that floor sleeping was unconstitutional, right? So the jury did not have to make that argument. So all the jury really had to find was, did these folks sleep on the floor? And if so, what were their damages? That's correct. But with that in mind, it took three days to adjudicate those damages and that liability finding just for two people. So there were only two people involved in these two cases? No. Respectfully, that's with respect to the Thomas case. With respect to the Baeza and Corral case, I believe you had about 15 plaintiffs in the Baeza case. And I may mix up the plaintiffs. 15 named plaintiffs. So you would end up with approximately 20 or 25 plaintiffs, all of whom there would have had to have been evidence put on as to the specific circumstances of how those individuals slept. And these were all named plaintiffs in the two complaints? They were all named plaintiffs, yes. So let me ask you a different question. What did Judge Pregerson in this case, what did Judge Pregerson stay? His written order seems to only stay discovery and to continue various hearings. But when I read the minute entries, they seem to indicate that the litigation itself was stayed. What was your understanding of what was stayed? The cases themselves were never stayed, Your Honor. Discovery was put off simply so that the parties initially could pursue some settlement discussions. And this is between 2007 and 2011. And then when those discussions broke down, it was in and around the time the Supreme Court decided the Walmart versus Dukes case. That prompted the defense to file a motion for decertification. Then it became a, just for purposes of judicial economy, continuing to not litigate the cases actively, the Bays and Corral cases, simply so that the decertification issue could be resolved. Because as Your Honor pointed out, that issue could have an impact on all three cases. Right. So let's assume, just for purposes of discussion, that any non-action on the part of the plaintiffs up until the time this Court denied permission to appeal the decertification order was justified, because of all the reasons you just said. We've got about an eight, and they then filed the motion to lift the stay about 18 months after that. Why is that short delay, that 18-month delay in the context of an 11-year-old case, sufficient for the judge to dismiss? Well, respectfully, Your Honor, I wouldn't couch it as a short delay. I would couch it as a delay that's actually longer, in a lot of cases, than most Rule 16 scheduling orders. But the fact of the matter is... You do agree that's the relevant time period to look at it. Assuming, for argument's sake, as Your Honor has couched it, that up until that point in time, September of 2012, that that delay was justified. Well, and in fact, I ask that because you sort of suggested that in your... The reason we were waiting is that decisions might come down that reshape the entire litigation. And that's why, Your Honor, that's exactly correct. That's why, in our brief, we couched it as even assuming the plaintiff's version of the events as the actual version of... Up until that point in time, there wasn't an obligation for them to take action to move the cases forward. Then you would get to that September of 2012 date, assuming that to be the case. Counsel, isn't that when the disability of plaintiff's counsel comes into play? And that, I believe, as described by plaintiff's counsel, that disability, I think, covered a period of about 14 months. Does it not? Well, and, Your Honor, in response to the concept of counsel's disability, while I would certainly... The last thing I would want to do is in any way suggest that I'm not With that being said, the problem with the concept of saying that there was a disability that rose to the level of preventing counsel from actually litigating both the Bays and Corral cases is the fact that the same plaintiff's counsel was actively litigating the Thomas case during that point in time. We have the timesheets in the Thomas case. And I haven't tried to do any comparison. Was there any argument in the district court that time was being actively billed on the Thomas case during that time period? There was, Your Honor. And you can actually look at the docket to just... The docket in the Thomas case shows very clearly, and I can find you the record sites. If you look at the docket itself, you can see there were multiple filings by plaintiff's counsel during that period of time in the Thomas case. So, again, I'm sensitive to the concept of there being a disability that would prevent an attorney from having the ability to work on a particular case. But when you make that representation, and then at the same time you're actively litigating another case, it's a little hard to swallow. Did counsel make that representation to the district court before the time you filed your motion to dismiss for lack of prosecution? In other words, did counsel go to the district court and say, Your Honor, I've got this problem, and therefore I want deadlines moved or whatever? No. And there were no status conferences in these cases? There were multiple hearings in the Thomas case. Right. But not in these two? No. There was nothing of substance filed in the Bays or Thomas case from, I believe, I believe it was from 2008. There was nothing of substance filed. Well, let me just ask a question about what troubles me in a slightly different way. Whatever else happened or didn't happen, by March of 2014, the other side said, Let's get these cases to trial. We're ready to go. We'll set up a schedule, set a trial date. We want to move them. In terms of when the motion to reactivate was filed. Right. When the motion to reactivate was filed. How would you have been prejudiced at that point had the cases, these two individual, or these 25 individual cases, if you will, simply moved towards trial? What would have been different than had they moved 18 months earlier to trial? Well, first of all, Your Honor, there's a specific answer to your question. But the fact of the matter is there's actually a presumption of presumption. No, I understand. But here's my problem. It seems to me when I look at the potential prejudice, it's exactly the same as the potential prejudice that would have been there had they moved to lift the stay 18 months earlier. In other words, we were nine years after the event or seven years after the event. So the passage of those initial 18 months, did that put any additional burden on you? Well, yes, it did, Your Honor. It would have. And I understand that Your Honor is couching 18 months as not being that long of a period of time. But in the jail context, it's actually a long time. No, I understand it's a long time. What I'm trying to figure out is given the age of the incidents in these cases, does that further delay put you in any worse position than you would have been had they moved 18 months earlier to lift the stay? Would it have been tremendous? No, it wouldn't have been. But the fact of the matter is is that with respect to that additional 18 months, you do simply have the matter that people cycle in and out of those jobs that are working in the jail, the people who have knowledge about where things were happening, particularly with respect to a practice that existed even at that point, as Your Honor pointed out a long time ago, tracking people down even when we had to do it with respect to the Thomas case was tough already. When you add an additional 18 months on top of that, it just makes a difficult task even more difficult. Well, shouldn't all of those difficulties that you're citing, shouldn't the judge actually considering these pending motions to consolidate? I mean, it troubles me if I have the history correct that these motions were pending for some time and yet, in fact, there was a hearing, at least in the Bias and Corral cases, and the judge never read those motions. I mean, so all of these difficulties that you're citing, that's where it seems to me they should have been explored. What would justify the court ignoring those motions? You seem to take the position the pendency was not enough, that the plaintiffs had to make some effort to tell the judge, look, these motions have been pending. You've done nothing about them. I think that's correct, Your Honor. The plaintiffs do have that burden, and I think the case law on that subject is pretty clear, that it's plaintiff's burden and nobody else's to actually take action to move the cases forward. In response to your question, a lot of the difficulties that we've been talking about were briefed in the consolidation motion, but I want to point out to the court that the concept that there was an abuse of discretion by the court not ruling on the consolidation motion, if you look at the consolidation motion itself that was filed, there is absolutely zero indication that it would have been granted, and in fact, it would have been denied if you look at the papers. The consolidation motion itself is six pages long. It consists of three paragraphs, 16 lines of text, and there was zero evidence submitted in support of it. So the concept that there was any abuse of discretion by the court not ruling on that motion, there's every indication that if the court were to have ruled on that motion, that it would have been summarily denied. So to the extent that there was a failure by the district court of not ruling on that motion, I would urge this court to find that to be harmless error, simply because the fact of the matter is, had the court actually ruled on it, it would have been denied, in my opinion. With respect to the concept that, as Your Honor couched it, simply letting the motion and not ruling on it, I think you have to look at the time period when that motion was filed and consider all of the moving parts that were going on at that period of time. You had initially the parties' interest in exploring a global settlement of all three of the cases, which broke down in and around 2011. You had the Supreme Court's decision in Walmart, which led to the decertification. On top of all of that, you had the disbarment of former plaintiffs' counsel, which actually led to significant briefing about who was going to continue to represent the class as lead counsel. When did that occur? That was in 2007, Your Honor. So it's not like the plaintiffs filed the motion and then the court just sat on it and nothing was happening for that entire period of time. There were extensive, very important issues that were being briefed, which, quite frankly, took precedent over the consolidation motion, especially given, as I pointed out earlier, the defects of that motion itself, Your Honor. This is not necessarily raised by this case, but are the other members of the class, was their ability to sue based on the alleged violation stayed during the class certification period? The members that are in the base and corral cases? Yes. Yes, I believe they were. And probably stayed until we rule in this case because what's in front of us, in addition to everything else, is the judge's denial of class certification. He denied the rest of their motions at the same time that he dismissed the case. To be honest, Your Honor, I actually don't know the answer to that question. I'm just trying to figure out whether or not the judge's dismissal of the case deprives the bulk of the class of the ability to come back and sue. I believe that the statute of limitations would begin to run upon the denial of the or rather the grant of the decertification motion and then the end of the Yeah, but he never ruled on the motion for class certification in this case, did he? He did not. Well, no, those motions were vacated, Your Honor. Were vacated at the end, right, as moot. Mr. Clark, one question I meant to ask you. On the motion to consolidate, you typified it as weak. Did you file an opposition to that? We did, Your Honor, yes. Unless the Court has any more questions, I'm prepared to submit at this point. All right. Ms. Yegman, you have 6 minutes and 10 seconds for rebuttal. Would you refresh my recollection as to the basis of your claim for disability during this period of time? It was hip replacement surgery, and I had a lot of pain prior to it that just completely disabled me because it was at the end stage of the need for replacement. Did you have anyone else in your firm besides yourself? Not who's able to handle this now. So the filings that were made in the Thomas case were done by you? I don't believe there were, I'm trying to remember, but I don't believe there were many filings done in the Thomas case during, certainly not during the period that I was actually disabled. And I think there was a filing done in October of 2012, but I'd have to check it to get that case to trial. But I don't think that anything else really took place in that case. October 2012? Yes, much after that. I don't recall, in 2013, I was completely disabled. I don't recall filing much in the Thomas case. And basically, I just have no recollection of that. But anything's possible. And I'm having some difficulty with my computer up here. But did you submit requests for time in your attorney's fees application in the I don't recall, but I don't think I did. I can't tell. That's why I'm asking. Could have, but I don't believe that I did. But anything's possible. And it would have been very limited because I was taking very, you know, pain medications prior to having the surgery and afterwards for quite a long time. So I don't think I would have been doing a lot of legal work. Was counsel for the county correct in saying that you never went to the judge during this time period and said, I've got a problem, so I need some consideration in terms of deadlines and discovery and other things? I think he's correct, yeah. He is correct. Did you have some obligation to do that? As opposed to later saying, Judge, in retrospect, let me tell you why the case didn't move along. I think it's part of a disability that you don't necessarily, one of the reasons that people can't perform adequately when they have a disability and they have to take pain medication is that you're not going to think of doing all the right things. But that's part of the disability, in effect. One of the reasons that you can't really do very much that maybe in hindsight seems very sensible. Counsel, didn't you have a partner in your practice during this period of time? He wasn't working on that case, wasn't familiar with it. It was former Judge Joseph Reichman, and he's still a partner in the law firm, but he couldn't have done anything really that would have advanced this case. I knew about it, and he didn't. Right, but isn't it commonplace in partnerships? It's the nature of a partnership. Sometimes one partner is not able to do things that they've been doing, and so the other partner steps in. It's not like you were in a solo practice. Why shouldn't it factor into any judgment about the failure to prosecute this case that you did have a partner, apparently a partner of considerable experience, who could have stepped in to move the case along? What's unreasonable about taking that view? There's nothing unreasonable about it per se, but the fact is that, well, it didn't happen first. Secondly, I don't think his knowledge of the case at that point would have enabled him to. So I just don't think it was a reasonable thing to have happened. I ultimately would have had to have prepared all the documents relating to pretrial work. It couldn't have gone forward in the condition that I was in, and I had to do what was necessary to move the case along when I was back on my feet again, basically. When was the order decertifying the class in Thomas versus Abaca? It was—I've got an exact date here, I think. The order decertifying the class? It was actually made in March—it was decertified in March 22nd. Of what year? 2012, and then there was a permission to appeal the decertification order that was denied on September 2012. Yeah. I believe also— So from September 2012, you knew that the probabilities were that you weren't going to certify Baeza, right? Could you repeat that? You knew that there wasn't going to be any certification of the Baeza case. You're going to have to try those as individual cases. That wouldn't have been a problem once I was back on my feet. That would not have been a problem. It would have gone very quickly and could have been done at the same time as the Thomas case. It is also something that jogged my mind, was that we did, in the Thomas case, in which the motion to consolidate was made, there was a motion, I think it's Rule 83.9, I'm not sure of the exact number, made to have the court rule on the various things it had not ruled upon. And so there was some effort to get the court to rule. The court did not rule on any of the things that it either vacated or just didn't do it. I think we've taken you past your time. Thank you, Ms. Hadley. I have 17 sentences. There isn't a small thing like that. All right. The case of— Okay, thank you, Your Honor.
judges: Lipez, Bea, Hurwitz